## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SARRESE J. BRADLEY**<br>15 Norris Drive<br>Bristol, Connecticut 06010<br><br>and<br><br>**SARRESE J. BRADLEY and PATRICE ANDERSON**,<br>as Husband and Wife<br>15 Norris Drive<br>Bristol, Connecticut 06010<br><br>*Plaintiffs*<br><br>v.<br><br>**BALTIMORE WASHINGTON MEDICAL CENTER, INC.**<br>c/o Neal Brown, Esquire<br>1301 York Road, Suite 300<br>Lutherville, Maryland 21093<br><br>and<br><br>**BALTIMORE WASHINGTON EMERGENCY PHYSICIANS, INC.**<br>c/o Neal Brown, Esquire<br>1301 York Road, Suite 300<br>Lutherville, Maryland 21093<br><br>and<br><br>**STEVEN J. ABERT, M.D.**<br>c/o Neal Brown, Esquire<br>1301 York Road, Suite 300<br>Lutherville, Maryland 21093<br><br>and | **Case No. 1:15-cv-3266**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| **ARUNDEL PHYSICIANS ASSOCIATES, L.L.C. T/A UNIVERSITY OF MARYLAND BALTIMORE WASHINGTON PRIMARY CARE** <br> c/o Neal Brown, Esquire <br> 1301 York Road, Suite 300 <br> Lutherville, Maryland 21093 <br><br> and <br><br> **SANDEEP PANDOVE, M.D.** <br> c/o Neal Brown, Esquire <br> 1301 York Road, Suite 300 <br> Lutherville, Maryland 21093 <br><br> *Defendants* | |

## COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiffs, Sarrese Bradley, Individually, and Sarrese Bradley and Patrice Anderson, as husband and wife, by their attorneys, E. Dale Adkins, III, Ryan S. Perlin and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., file this Complaint and Election for Jury Trial against the Defendants, Baltimore Washington Medical Center, Inc., Baltimore Washington Emergency Physicians, Inc., Steven J. Abert, M.D., Arundel Physicians Associates, L.L.C. T/A University of Maryland Baltimore Washington Primary Care, and Sandeep Pandove, M.D., and state:

2

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, the Plaintiffs and Defendants are citizens of different States.

2. A Statement of Claim was filed with the Health Care Alternative Dispute Resolution Office as required under Maryland law, and arbitration of the claim was waived by the Plaintiffs pursuant to § 3-2A-06B(b) of the Courts and Judicial Proceedings Article. The Waiver of Arbitration and the Certificates of Qualified Expert and Report which were filed before the Health Care Alternative Dispute Resolution Office are attached as **Exhibit 1**, **Exhibit 2**, **Exhibit 3** and **Exhibit 4** respectively.

3. Plaintiffs have complied with all conditions precedent and all such conditions precedent have been performed or have occurred.

## THE PARTIES

4. The Plaintiffs, currently and throughout the events set forth in this Complaint, have resided in Connecticut, and therefore are considered citizens of Connecticut.

5. The Defendants reside or have their principal places of business in Maryland, and therefore are considered citizens of Maryland.

6. At all times hereinafter set forth, the Defendant, Baltimore Washington Medical Center, Inc. ("BWMC"), was and is a medical facility offering medical and other related services to the general public and in such capacity, such hospital, its agents, servants

and/or employees, medical and administrative staff, and consultants held themselves out as practicing ordinary standards of medical, hospital, radiologic, surgical, nursing, emergency, and pathologic care and, as such, owed a duty to the Plaintiffs to render and provide health care within the ordinary standards of medical, hospital, and emergency care, and to exercise reasonable skill and care in the selection of its personnel to provide competent physicians and emergency physicians and other medical and administrative personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practices of emergency medicine, and to supervise and provide Claimant with diagnostic and medical services and treatment commensurate with the condition from which the patient suffered and for which patient entered said hospital.

7. At all times hereinafter set forth, the Defendant, Baltimore Washington Emergency Physicians, Inc. ("BWEP"), was and is a professional corporation, which, at all times relevant to this Complaint and Election for Jury Trial, offered emergency medicine and other related services to the general public at the University of Maryland Baltimore Washington Medical Center and in such capacity, this professional corporation, its agents, servants, and/or employees, medical staff, and consultants, held themselves out as practicing ordinary standards of medical and health care and, in such capacity, had a duty to Plaintiffs to render and provide health care to Sarrese Bradley within the ordinary standards of medical and health care and to exercise reasonable skill and care in the selection of its personnel to provide competent physicians, and other medical and

administrative personnel and consultants, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and to supervise and provide the Plaintiff those medical and diagnostic services and the treatment commensurate with the condition from which Plaintiff suffered and for which he sought treatment.

8. At all times hereinafter set forth, the Defendant, Steven J. Abert, M.D. ("Dr. Abert"), held himself out to the Plaintiffs and to the general public as an experienced, competent and able physician possessing or providing that degree and skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of emergency medicine, and as such, had a duty to the Plaintiffs to render that degree of care and treatment to Sarrese Bradley which is ordinarily rendered by those who devote special study and attention to the practice of emergency medicine.

9. At all times hereinafter set forth, the Defendant, Arundel Physicians Associates, L.L.C. T/A University of Maryland Baltimore Washington Primary Care ("BWPC"), was and is a professional corporation which, at all times relevant to this Complaint and Election for Jury Trial, offered internal medicine and other related services to the general public and in such capacity, this professional corporation, its agents, servants, and/or employees, medical staff, and consultants, held themselves out as practicing ordinary standards of medical and health care and, in such capacity, had a duty to Sarrese Bradley to render and provide health care within the ordinary standards of medical and health care and to exercise reasonable skill and care in the selection of its personnel to

5

provide competent physicians, and other medical and administrative personnel and consultants, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and to supervise and provide its patients those medical and diagnostic services and treatment commensurate with the condition from which Sarrese Bradley suffered and for which he sought treatment.

10. At all times hereinafter set forth, the Defendant, Sandeep Pandove, M.D. ("Dr. Pandove"), held himself out to the Plaintiffs and to the general public as an experienced, competent and able physician possessing or providing that degree and skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of internal medicine, and as such, had a duty to the Plaintiffs to render that degree of care and treatment to Sarrese Bradley which is ordinarily rendered to those who devote special study and attention to the practice of medicine and internal medicine.

11. At all times hereinafter set forth, all physicians, nurses, and/or other individuals staffing the Baltimore Washington Medical Center emergency department were agents and/or apparent agents, servants, or employees of Defendants, Baltimore Washington Medical Center, Inc. and Baltimore Washington Emergency Physicians, Inc. including, but in no way limited to, Steven J. Abert, M.D.

12. At all times hereinafter set forth, all physicians, nurses, and/or other individuals staffing the practice known as University of Maryland Baltimore Washington Primary Care were agents and/or apparent agents, servants, or employees of Defendants,

Baltimore Washington Medical Center, Inc., Baltimore Washington Emergency Physicians, Inc., and Arundel Physicians Associates, L.L.C. T/A University of Maryland Baltimore Washington Primary Care including, but in no way limited to, Sandeep Pandove, M.D.

13.  In the morning on June 21, 2012, the Plaintiff, Sarrese Bradley called an ambulance after feeling something "pop" in his lower back.  The ambulance personnel recorded that Mr. Bradley was unable to stand because of back pain and injury to his pelvis. Mr. Bradley was taken by ambulance to the emergency department of BWMC and arrived at approximately 7:13 a.m.

14.  Mr. Bradley was seen in the emergency department by Mary Bradley, R.N. (no relation) at approximately 7:22 a.m.  Nurse Bradley recorded that Mr. Bradley reported sharp, throbbing lower back pain and difficulty moving since feeling a "pop" in his lower back earlier that morning.  Nurse Bradley documented that Mr. Bradley now had numbness, tingling, and weakness radiating down to his legs and feet.  Mr. Bradley was noted to be diaphoretic due to pain, which was documented as 12/10.

15.  Mr. Bradley was also seen by Defendant, Dr. Abert.  Through a scribe (Ashley Larsen), Dr. Abert recorded that, "Pt was getting ready for work this AM getting dressed when he felt a pop in his back, c/o severe low back pain radiating down both legs to his feet with tingling in both legs."  Mr. Bradley was also noted to have had tingling down both legs, which was worsened by movement and relieved by nothing.

7

16. Dr. Abert performed a physical examination which was noted to be positive for decreased range of motion. There was no examination performed to determine whether Mr. Bradley's complaints were associated with spinal cord or nerve root compression leading to cauda equina syndrome.

17. While in the emergency department, there was no evaluation of Mr. Bradley's reflexes, there was no examination of Mr. Bradley's perineum or rectum for neurologic response, and no imaging studies were ordered.

18. Mr. Bradley requested that Dr. Abert order an MRI, but Mr. Bradley was told that if he wanted one, he would need to get it on his own.

19. Mr. Bradley was discharged from the emergency department at approximately 9:06 a.m. on June 21, 2012 without any radiologic studies having been performed to assess the condition of Mr. Bradley's spinal cord or spinal nerve roots, and without any consultation with a neurosurgeon or spinal surgeon.

20. Mr. Bradley was discharged with instructions to follow up with BWPC within two to three days. When Mr. Bradley asked why he was being discharged, he was told, "we need the bed." Mr. Bradley was instructed to get an MRI, but was told that the hospital could not perform an MRI without a primary care physician's order.

21. Later that afternoon, Mr. Bradley presented to Arundel Physicians Associates, L.L.C. T/A University of Maryland Baltimore Washington Primary Care (hereinafter, "BWPC") at approximately 3:21 p.m. He was seen by Sandeep Pandove, M.D., an internist.

8

22. Dr. Pandove recorded Mr. Bradley's pain as 10/10 and noted that despite Mr. Bradley's complaints, the emergency department did not obtain an MRI when Mr. Bradley was there earlier that day. He did not elicit an appropriate history concerning the effects of Mr. Bradley's complaints.

23. Dr. Pandove performed a physical examination, but did not perform an examination to determine whether Mr. Bradley's complaints were associated with spinal cord compression. Dr. Pandove did not evaluate Mr. Bradley's motor strength or reflexes, did not evaluate Mr. Bradley's sensation, strength or gait in his lower extremities, did not examine Mr. Bradley's perineum or rectum for neurologic response, and did not perform an adequate neurologic examination.

24. Dr. Pandove did not make efforts to determine whether Mr. Bradley's complaints were associated with spinal cord or nerve root compression leading to cauda equina syndrome.

25. Dr. Pandove attempted to have Mr. Bradley obtain an MRI that afternoon, but because the radiology center could not schedule Mr. Bradley, Dr. Pandove simply instructed Mr. Bradley to obtain an MRI the next day.

26. Mr. Bradley returned to the hotel at which he was staying and fell asleep. He awoke at approximately 11:30 p.m. and realized that he had urinated on himself during his sleep. He went directly to the BWMC emergency department, arriving at approximately 11:58 p.m.

27.     Mr. Bradley was seen in the emergency department by Ketaki Abhyankar, M.D. Through his scribe (Alexander Engelmann), Dr. Abhyankar recorded that Mr. Bradley had a "mixture of numbness and pain in [bilateral lower extremities]." Dr. Abhyankar also recorded that Mr. Bradley was numb in his legs and pelvis, had urinary incontinence, had decreased rectal tone, and had motor deficits. Dr. Abhyankar ordered an MRI, which was performed at approximately 5:14 a.m. and interpreted by Morris Gavant, M.D.

28.     Mr. Bradley's clinical history according to Dr. Gavant was "suspected cord compression" based on "low back pain with bilateral lower extremity numbness." Dr. Gavant reported that the MRI showed spinal stenosis at the L2-L3, L3-L4, L4-L5, and L5-S1 levels. At the L4-L5 level, Dr. Gavant reported a central soft disc herniation superimposed on a subjectively developmentally small spinal canal. At the L5-S1 level, Dr. Gavant reported a right paracentral to right lateral soft disc herniation superimposed on a mild circumferential spondylitic change and subjectively developmentally small spinal canal. At the L2-L3 and L3-L4 levels, Dr. Gavant reported ligamentum flavum hypertrophy and a subjectively developmentally small spinal canal.

29.     Mr. Bradley was seen in the emergency department by neurosurgeon, Amiel Bethel, M.D. Dr. Bethel reported that Mr. Bradley's radiology showed degenerative disk at the L4-5 and L5-S1 levels with a massively herniated central disk at L5-S1 causing almost complete 100% compromise of the canal space. Dr. Bethel diagnosed Mr. Bradley

with disk spondylosis and disk herniation L5-S1 with cauda equina syndrome and recommended emergent surgery, to which Mr. Bradley agreed.

30. Mr. Bradley was taken to the operating room at approximately 9:55 a.m., where Dr. Bethel performed a three-hour procedure involving L5 bilateral laminectomies, L4 bilateral laminectomies, inferior L3 laminectomy, L4-5 medial facetectomies bilateral with foraminotomies, L5-S1 medial facetectomies with foraminotomies bilateral, and L5-S1 diskectomy under the operative microscope bilateral with removal of a massive extruded fragment.

31. Mr. Bradley was discharged on June 25, 2012.

32. Despite aggressive therapy to maximize function, Mr. Bradley experienced continued pain and numbness in his lower back radiating down to his legs. A subsequent MRI in September revealed another central disc herniation at L4-L5 with facet arthropathy and central stenosis at L5-S1 with facet arthropathy.

33. On November 27, 2012, Mr. Bradley underwent L4 and L5 laminectomies with complete removal of the left L4-L5 and L5-S1 facet joints along with posterolateral arthrodesis at L4-L5 and L5-S1 with posterior interbody fusion and pedical screw instrumentation.

34. Despite aggressive therapy to maximize function, Mr. Bradley has continued to experience ongoing pain, numbness, and weakness in both legs as well as gait instability. He has also experienced difficulty urinating and sexual dysfunction.

## COUNT I (Negligence against BWMC, BWEP, and Dr. Abert)

35. Plaintiffs allege that Defendants, Baltimore Washington Medical Center, Inc., Baltimore Washington Emergency Physicians, Inc., and Steven J. Abert, M.D., individually or through their agents, servants, and/or employees, were negligent and careless in that they:

   a. Failed to obtain an MRI on June 21, 2012 while Mr. Bradley was in the emergency department at BWMC;

   b. Failed to consult with a neurosurgeon or spinal surgeon on June 21, 2012 while Mr. Bradley was in the emergency department of BWMC;

   c. Failed to recognize, assess, and address the signs and symptoms of developing spinal cord and nerve root compression leading to cauda equina syndrome while Mr. Bradley was in the emergency department at BWMC on June 21, 2012;

   d. Failed to perform a neurological examination, examination of the perineum and rectum, and/or sensory examination while Mr. Bradley was in the emergency department at BWMC on June 21, 2012;

   e. Failed to obtain an adequate history of the patient's condition and relevant symptoms;

   f. Discharged Mr. Bradley from BWMC on June 21, 2012;

   g. Failed to obtain timely surgical intervention prior to June 22, 2012 at 9:55 a.m.;

  h. Failed to employ adequate diagnostic procedures and tests to determine the nature and severity of the medical status and/or conditions of Mr. Bradley on June 21, 2012;

  i. Failed to exercise reasonable care in the timely and careful diagnosis of Mr. Bradley's condition;

  j. Were otherwise negligent and careless, to be determined in the course of discovery.

36. As a direct result of the negligence of the Defendants as set forth herein, Mr. Bradley was caused to suffer painful and permanent injuries to his body, was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur hospital expenses, medical expenses, and was caused to incur other financial losses.

37. As a further direct result of the negligence of the Defendants as set forth herein, Mr. Bradley will require in the future additional hospital and medical care, will be unable to engage in any normal activities, employments and pursuits, will sustain a total loss of earnings and earning capacity, and will otherwise suffer pain, personal injury and both economic and noneconomic damages.

**COUNT II (Negligence against BWPC and Dr. Pandove)**

38. Plaintiffs allege that Defendants, Arundel Physicians Associates, L.L.C. T/A University of Maryland Baltimore Washington Primary Care and Sandeep Pandove, M.D., individually or through their agents, servants, and/or employees, were negligent and careless in that they:

13

    a. Failed to order an urgent MRI on June 21, 2012 after Mr. Bradley was seen and examined by Dr. Pandove;

    b. Failed to refer Mr. Bradley urgently back to the emergency department at BWMC after seeing and examining him on June 21, 2012;

    c. Failed to refer Mr. Bradley for an urgent neurological or neurosurgical examination after seeing and examining him on June 21, 2012;

    d. Failed to perform a neurological examination, examination of the perineum and rectum, sensory examination, or gait and station assessment while Mr. Bradley was at BWPC in the afternoon on June 21, 2012;

    e. Failed to obtain an adequate history of the patient's condition and relevant symptoms;

    f. Failed to recognize, assess, and address the signs and symptoms of developing spinal cord or nerve root compression leading to cauda equina syndrome while Mr. Bradley was seen at BWPC on June 21, 2012;

    g. Failed to employ adequate diagnostic procedures and tests to determine the nature and severity of the medical status and/or conditions of Mr. Bradley on June 21, 2012;

    h. Failed to exercise reasonable care in the timely and careful diagnosis of Mr. Bradley's condition;

    i. Were otherwise negligent and careless, to be determined in the course of discovery.

39. As a direct result of the negligence of the Defendants as set forth herein, Mr. Bradley was caused to suffer painful and permanent injuries to his body, was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur hospital expenses, medical expenses, and was caused to incur other financial losses.

40. As a further direct result of the negligence of the Defendants as set forth herein, Mr. Bradley will require in the future additional hospital and medical care, will be unable to engage in any normal activities, employments and pursuits, will sustain a total loss of earnings and earning capacity, and will otherwise suffer pain, personal injury and both economic and noneconomic damages.

### COUNT III (Loss of Consortium against all Defendants)

41. Plaintiffs, Sarrese Bradley and Patrice Anderson, as husband and wife, incorporate by reference all the allegations set forth in the previous paragraphs as if fully set forth herein.

42. At all relevant times, Plaintiffs, Sarrese Bradley and Patrice Anderson, were and are married.

43. As a direct and proximate result of the Defendants' negligence, Plaintiffs were, are, and may continue to be deprived of the consortium, society, assistance, and support of their spouse, which has been, and which will continue to be to their great financial, physical, emotional, and psychological damage and loss.

44. As a further direct and proximate result of the Defendants' negligence, the Plaintiffs have jointly suffered loss of consortium and services and interference with and

injury to their marital relationship.

45.    All of the damages, losses, and injuries sustained by the Plaintiffs resulted directly and proximately from the negligence, carelessness, and wrongful acts and omissions of the Defendants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and as husband and wife, claim damages against the Defendants in an amount to be determined by a jury.

/s/ *E. Dale Adkins, III*
E. Dale Adkins, III (Bar No. 01425)
adkins@scbmalaw.com


_____
Ryan S. Perlin (Bar No. 20840)
SALSBURY, CLEMENTS, BEKMAN,
     MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
perlin@scbmalaw.com
410-539-6633
*Attorneys for Plaintiffs*